IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


UNITED STATES OF AMERICA    )
                            )
        v.                  )    CRIMINAL ACTION NO.
                            )       1:11cr7-MHT
MONTY ERVIN                 )          (WO)


### OPINION AND ORDER

This case is now before the court on a motion filed
by defendant Monty Ervin seeking review of a magistrate
judge's order detaining him pending trial.  Ervin has
been charged with tax evasion, conspiracy to defraud the
federal government, and structuring financial
transactions to avoid federal reporting requirements.
The magistrate judge held an arraignment and detention
hearing on April 20, 2011, and ordered, pursuant to 18
U.S.C. § 3142(f), that Ervin be detained pending trial
"based upon risk of flight." Trans. 69:23 (Doc. No. 80).

A district court reviews a magistrate judge's
detention orders de novo.  United States v. King, 849
F.2d 485, 489-90 (11th Cir. 1988).  The court may conduct

an evidentiary hearing if it "determines that additional evidence is necessary or that factual issues remain unresolved" after reviewing the defendant's motion; or the court may rely on the pleadings and evidence considered by the magistrate judge to determine whether "the magistrate [judge]'s factual findings are supported and ... the magistrate [judge]'s legal conclusions are correct." Id. at 490.  If the district court finds that the magistrate judge's factual findings are supported and that the legal conclusions are correct, the court may "explicitly adopt the magistrate [judge]'s pretrial detention order" without writing separate findings of fact and statement of reasons supporting detention.  Id. In a telephone conference before the court on May 18, 2011, the parties agreed to rely on the evidence and testimony from the April 20 hearing before the magistrate judge.

Based on an independent and de novo review of the evidence, the legal arguments offered by the parties in

briefing, and for the reasons explained below, this district court affirms the magistrate judge's detention order.   The court finds that there is "a serious risk that [Ervin] will flee."   18 U.S.C. § 3142(f)(2)(A). Furthermore, the court finds that no condition or combination of conditions save detention will reasonably assure Ervin's presence at trial and that, therefore, he must be detained pending trial.

Two conditions must be met before pretrial detention may be ordered.  First, one of the seven circumstances in 18 U.S.C. § 3142(f) must be established.   Under this provision, the court may order pretrial detention only after holding a hearing, and a hearing may be held only if one of the seven circumstances listed in § 3142(f)(1) and (f)(2) is alleged.  United States v. Byrd, 969 F.2d 106, 109 (5th Cir. 1992); see also United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988) (relating same procedure); United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988) (same).  Second, after the hearing is held

pursuant to § 3142, the court must find "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the other person and the community." Byrd, 969 F.2d at 109. When the government seeks pretrial detention because a defendant poses a serious risk of flight, the government's burden of proof is a preponderance of the evidence. United States v. King, 849 F.2d 485, 489 (11th Cir. 1988); United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985).

The first condition has been met by the government's showing that there is "a serious risk that [Ervin] will flee." 18 U.S.C. § 3142(f)(2)(A). The evidence from the April 20 hearing establishes a serious risk of flight. The magistrate judge correctly found as follows: Ervin "has the means. He has the money. He has the will. ... [T]he record is pretty clear that he is a risk of flight." Trans. 69:15-18 (Doc. No. 80).

4

The government has produced evidence that Ervin was on the verge of fleeing the country when U.S. Marshals arrested him after a four-week search.  Following the arrest of his wife (an alleged coconspirator) on January 31, 2011, Ervin told a confidential informant that he was "going to take an extended vacation."  Trans. 36:19-20 (Doc. No. 80).  The confidential source advised U.S. Marshals that Ervin knew he was named in a federal arrest warrant and that he was planning to leave the country for South or Central America.  When Ervin was arrested on March 19, 2011, he had in his possession a notebook with the address for a boating shop, latitude and longitude coordinates of islands in the Caribbean, as well as a list of supplies to procure for a marine voyage.  This evidence demonstrates convincingly that Ervin intended to leave the United States to evade arrest and arraignment on the current charges.

Furthermore, the government has produced evidence that Ervin has a history of concealing assets.  These

5

assets could be used to finance an additional flight attempt if he were released on bond.  Shortly before his arrest in Florida, Ervin directed companions to retrieve buried plumbing tubes he owned.  These tubes, seized by U.S. Marshals, contained gold with an estimated value of $ 345,000.  Additionally, evidence was offered showing that Ervin and his wife made large amounts of money managing real estate in the names of trustees who had no knowledge of the properties purportedly administered on their behalf.  Since his arrest, Ervin has refused to cooperate with the U.S. Pretrial Services in discussing any of his current finances.  Given this substantial history of asset concealment, there is simply no way for the court to determine what other resources Ervin has at his disposal.  The government has therefore established a serious risk that, if released from detention, Ervin would liquidate or retrieve hidden assets and employ them in a future attempt to leave the country.

Finally, the government has introduced evidence of statements made by Ervin that the federal government has no authority or jurisdiction over him. Ervin sent several letters to federal agents and prosecutors purporting to renounce his United States citizenship and invoking a self-styled sovereign immunity to the federal investigation and charges against him. However, in moving the court to overturn his pretrial detention, Ervin has noted that the Constitution's First Amendment protects his right to express a viewpoint that challenges the government's authority. Ervin is undoubtedly correct in that he is entitled to his beliefs, as well as to the right to express those beliefs, whether widespread or unusual, pro- or anti-government.

But, in evaluating the risk of flight, the court does not seek merely to punish Ervin for his beliefs or statements about his beliefs. Rather, Ervin has made specific statements that call into question whether he will abide by the court's order to appear at trial; it is

7

his conduct, or possible conduct, that is ultimately at issue, and his statements are relevant only to extent that they reflect on that conduct.  Speech or writing that is or may be part of conduct in violation of a court order or a criminal statute or, by extension, that may reflect on whether conduct is or may be in violation of a court order or a criminal statute is, in general, not shielded by the First Amendment from consideration by a court as evidence of the violation.  See Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949) ("It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.").  Therefore, in addition to attempted flight and concealment of assets, the court may take into account Ervin's repeated assertions that any court proceeding against him is intrinsically invalid.  Ervin's denial of his United States citizenship and rejection of federal authority to try him reinforces

8

the court's assessment of his conduct if released pending trial: that there is a serious risk that he will seek to leave the country in the face of the pending criminal charges.

Having determined that the government has established a serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A), the court must now determine whether any "condition or combination of conditions will reasonably assure the appearance of ... [Ervin] as required and the safety of any other person and the community." Byrd, 969 F.2d at 109; see also 18 U.S.C. § 3142(e).  The court finds that the evidence from the April 20 hearing, as previously related, establishes that no condition will reasonably assure Ervin's appearance.

First, the language of § 3142(e) requires that, before Ervin may be released, the court must find that there is a condition or combination of conditions that will assure both his appearance at trial and the safety of any other person and the community; unless both

assurances are satisfied, detention is warranted.  See also United States v. Fortna, Jr., 769 F.2d 243, 249 (5th Cir. 1985) ("The wording of the Act, particularly the first sentence of section 3142(e), makes it evident that the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient; both are not required.") (emphasis in original) (footnote omitted).  Because the court finds that no condition or combination of conditions will assure Ervin's appearance at trial were he to be released from detention, the court need not address whether any condition or combination of conditions will assure the safety of the community.

In support of his motion to overturn his pretrial detention, Ervin has made a proffer to the court that his mother, son, and daughter will put up their property as security for a bond of release.  Ervin argues that this condition in combination with electronic monitoring will deter a potential flight attempt.

10

Under the circumstances, the proffer does not provide reasonable assurance of Ervin's presence at trial. Ervin has concealed substantial assets in the past. There is a strong likelihood that he would simply use these finances to reimburse his relatives for any loss after fleeing from the country.

To determine whether there are conditions of release that will reasonably assure a defendant's appearance at trial, courts must also consider, among other things, the defendant's "character ... [and] financial resources." 18 U.S.C. § 3142(g)(3)(A). There is ample evidence in this case that no conditions of release can assure Ervin's presence at trial. First, the evidence is overwhelming that Ervin is ready, willing, and able to abscond if given the chance. Second, Ervin apparently does not even acknowledge the court's authority to set conditions of release. His attempted flight, concealed assets, and rejection of federal authority present not only a serious risk, but a certainty, that he will flee

11

if released from detention.  His flight can be prevented
by no means other than pretrial detention.  For all of
the above reasons, the court will order Ervin detained
pending trial.

                            ***

    Accordingly, it is ORDERED as follows:

    (1) Defendant Monty Ervin's motion for revocation of
        detention order (Doc. No. 78) is denied.

    (2) The order of the magistrate judge entered on
        April 20, 2011 (Doc. No. 68), is affirmed.

    DONE, this the 20th day of June, 2011.

                              /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE